UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MATCIARA FINKLEY,

                Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. 3:15-cv-05678-KLS

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income (SSI) benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge.[1] For the reasons set forth below, the Court finds that defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On May 10, 2011, plaintiff filed applications for disability insurance and SSI benefits alleging she became disabled beginning May 5, 2010.[2] Both applications were denied on initial administrative review and on reconsideration.[3] At a hearing held before an Administrative Law

---

[1] 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73; Local Rule MJR 13.

[2] Dkt. 9, Administrative Record (AR), 21.

[3] *Id.*

ORDER - 1

Judge (ALJ) plaintiff appeared and testified, as did a vocational expert.[4]

In a decision dated August 10, 2012, the ALJ found plaintiff was able to perform other jobs existing in significant numbers in the national economy and therefore not disabled.[5] Plaintiff appealed that decision to this Court, which based on its determination that the ALJ erred in assessing plaintiff's residual functional capacity (RFC) – and in particular the evidence in the record concerning her concentration, persistence and pace and social functioning – remanded this matter for further administrative proceedings.[6]

A second hearing was held before the same ALJ on remand, at which plaintiff appeared and testified as did medical expert, Miriam Sherman, M.D., and a different vocational expert.[7] In a decision dated May 27, 2015, the ALJ found plaintiff was disabled when considering her substance use disorders, but that if her substance use was stopped, she could perform other jobs existing in significant numbers in the national economy and therefore was not disabled.[8] It does not appear that the Appeals Council assumed jurisdiction of this case, making the ALJ's decision the Commissioner's final decision, which plaintiff appealed to this Court.[9]

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in the alternative for further administrative proceedings, arguing the ALJ erred:

(1)  in failing to follow this Court's prior remand order;

(2)  in giving the greatest weight to Dr. Sherman's testimony concerning the impact of plaintiff's substance use;

---

[4] AR 37-66.
[5] AR 21-32.
[6] AR 861-79.
[7] AR 806-32.
[8] AR 777-800.
[9] 20 C.F.R. § 404.984, § 416.1484; Dkt. 3.

ORDER - 2

  (3)  in evaluating the medical opinion evidence concerning plaintiff's limitations in the areas of concentration, persistence, and pace and social functioning;

  (4)  in finding plaintiff's impairments did not meet a listed impairment absent substance use;

  (5)  in discounting plaintiff's credibility;

  (6)  in assessing plaintiff's RFC; and

  (7)  in finding plaintiff could perform other jobs existing in significant numbers in the national economy.

For the reasons set forth below, the Court agrees the ALJ erred in giving the greatest weight to Dr. Sherman's testimony concerning the impact of plaintiff's substance use. Because that error necessarily calls into question the ALJ's evaluation of the medical opinion evidence concerning plaintiff's concentration, persistence, and pace and social functioning, as well as the ALJ's RFC assessment and determination that plaintiff could perform other jobs, reversal of this matter and remand for further administrative proceedings is warranted.

## DISCUSSION

  The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination.[10] "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."[11] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[12] The Commissioner's findings will be

---

[10] *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991).

[11] *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)).

[12] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

ORDER - 3

upheld "if supported by inferences reasonably drawn from the record."[13]

Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required."[14] "If the evidence admits of more than one rational interpretation," that decision must be upheld.[15] That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made."[16]

I.   The ALJ's Reliance on Dr. Sherman's Testimony

The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled.[17] If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends.[18] A claimant may not be found disabled if alcoholism or drug addiction (DAA) would be "a contributing factor material to the Commissioner's determination" that the claimant is disabled.[19]

To determine whether a claimant's alcoholism or drug addiction is a materially contributing factor, the ALJ first must conduct the five-step disability evaluation process "without separating out the impact of alcoholism or drug addiction."[20] If the ALJ finds the claimant is not disabled, "then the claimant is not entitled to benefits."[21] If the claimant is found

---

[13] *Batson*, 359 F.3d at 1193.

[14] *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).

[15] *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

[16] *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

[17] 20 C.F.R. § 416.920.

[18] *See id.*

[19] *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001) (citing 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J)).

[20] *Id.* at 955.

[21] *Id.*

ORDER - 4

disabled "and there is 'medical evidence of drug addiction or alcoholism,'" the ALJ proceeds "to determine if the claimant 'would still [be found] disabled if [he or she] stopped using alcohol or drugs.'"[22] Thus, if a claimant's current limitations "would remain once he [or she] stopped using drugs and alcohol," and those limitations are disabling, "then drug addiction or alcoholism is not material to the disability, and the claimant will be deemed disabled."[23]

At the second hearing, Dr. Sherman, the medical expert, testified that based on her review of the record, in addition to a mood disorder, anxiety-related disorders, a posttraumatic stress disorder, and a panic disorder, plaintiff had a possible substance-induced mood disorder, a possible substance-induced anxiety disorder, and substance addiction.[24] Dr. Sherman testified that plaintiff's alcohol use and functioning appeared to be related, and that with substance use, she had marked difficulties in activities of daily living, marked difficulties in concentration, persistence, and pace, and marked difficulties in social functioning, but that absent such use she had mild, moderate and mild difficulties respectively.[25]

In response to questioning from plaintiff's counsel as to what evidence in the record indicated regular, ongoing, and consistent substance use, Dr. Sherman testified that alcohol use was mentioned in records from 2008, 2011, and 2013, and that reports of use of marijuana were mainly from 2011.[26] When further questioned as to whether the evidence of alcohol use that she saw indicated plaintiff was drinking regularly or frequently, Dr. Sherman testified:

> Generally for people who use alcohol, one has to assume that this is not an unusual event. That's all I have to say about this. I mean, you know, does every record -- does every note indicate that alcohol has been used in excess,

---

[22] *Id.* (citing 20 C.F.R. § 416.935).

[23] *Ball v. Massanari*, 254 F.3d 817, 821 (9th Cir. 2001).

[24] AR 811.

[25] AR 812-13, 815.

[26] AR 824.

ORDER - 5

no. That's true. Every record does not indicate that. One has to actually connect the dots and as I say, we have records from 2008 to 2013 that alcohol was being used. Whether it was used every day, maybe not, but was the alcohol used significant? Perhaps significant in that it exacerbated symptoms of depression and anxiety, yes, one can assume that or one can infer that.[27]

The following exchange then occurred between Dr. Sherman, plaintiff's attorney, and the ALJ:

> Q [plaintiff's attorney]  How frequent would substance use have to be to be presumed to exacerbate underlying symptoms of depression or anxiety?
>
> A [Dr. Sherman]  I can't answer that because it very [sic] individual, . . . but it is known in the literature that alcohol does exacerbate those symptoms.
>
> Q  But with what frequency of use . . . and for what duration when not using?
>
> A  Yeah. That's really hard to say. That's totally individual. One can become depressed with one use -- overuse of alcohol. How long does it remain, that's impossible to determine, although in the literature, we know that those symptoms can get worse.
>
> . . .
>
> Q [ALJ]  . . . [I]n reference to the alcohol, is it your opinion that there is a generalized tendency to underreport alcohol?
>
> A [Dr. Sherman]  Absolutely.
>
> Q  And is that what you're seeing when you see occasional references, but not references to every treatment record?
>
> A  Yes, and frequently doesn't even ask about it.
>
> Q  Okay
>
> A  But this is not infrequent references that we have here. As I say, there are references in 2008, 2010, 2011, 2013. . . .
>
> . . .
>
> Q [plaintiff's attorney]  What are you referring to, to indicate that there is an underreporting? Is there something in the record, which indicates that

---

[27] AR 825.

ORDER - 6

they believe that she was using, even though she was not stating that she was using?

    A  Yeah, characteristically . . . for most people who use alcohol, they underreport how much they use and when they use. . . .

    Q  So your comment was not specific to this Claimant?

    A  Not specific to this Claimant--[28]

    Q  Okay . . .

    A  -- but characteristic of people who use alcohol and certainly marijuana.

The ALJ determined DAA to be a materially contributing factor in this case.[29] He based that determination in large part on Dr. Sherman's testimony that plaintiff had a polysubstance abuse disorder, including alcohol and marijuana, her identification of alcohol and marijuana abuse by plaintiff "throughout the record," her testimony that the substance abuse was not under control and adversely affected her overall mental functioning, and her testimony indicating that alcohol abuse "is frequently concurrent with anxiety, depression, and insomnia," and marijuana abuse "can aggravate anxiety symptoms, and give rise to paranoid ideation.[30] As such, the ALJ gave Dr. Sherman's testimony "significant weight in showing that [plaintiff's] mental limitations are only work-preclusive where substance abuse is an issue."[31]

Plaintiff argues the evidence in the record does not support Dr. Sherman's testimony, and therefore the ALJ erred in giving that testimony significant weight. The Court agrees. The record does strongly indicate, contrary to plaintiff's assertion, that her alcohol use was more regular and consistent than a few isolated incidents. In August 2010, plaintiff reported that she had a history

---

[28] AR 825-26.

[29] AR 781.

[30] AR 781-82, 785.

[31] AR 785.

ORDER - 7

of "heavy drinking," that while she did not feel she had a drinking problem other people told her she had one, that she "drank often to cope with her symptoms" – though she "did not necessarily drink every day" – and that she last drank two weeks ago.[32]

Despite what she reported some five months earlier, in January 2011, plaintiff answered "[n]ever" to the question of whether she had had any alcohol during the past year.[33] In early May 2011, plaintiff reported "[o]ccasional or social" alcohol use, and that she had used alcohol four days previously.[34] In late July 2011, while she reported last "drinking to excess" in 2007/2008, plaintiff stated that she drank "once every few months in social situations."[35] Also in late July 2011, plaintiff reported "occasional use of alcohol," adding that when she goes out socially she "will drink to help cope with her anxiety," that she "may drink once a month," and that she "may consume 3-4 drinks when she does drink."[36]

In late November 2011, plaintiff reported that "her heaviest use period is on weekends, not often, with amounts up to one to two shots."[37] There are no reports of alcohol use from 2012, and in mid-June 2013, plaintiff reported not having consumed any alcohol since being prescribed medication "for the past couple of years."[38] In late July 2013, however, she reported not having taken her medication as prescribed, and in early August 2013, she admitted drinking vodka the previous night in order to self-medicate and becoming "highly intoxicated."[39] In late May 2014, plaintiff characterized her alcohol use as "[i]ntermittent," although "when [she] did drink, it was

---

[32] AR 291.
[33] AR 577.
[34] AR 310-11.
[35] AR 542.
[36] AR 421.
[37] AR 623.
[38] AR 1172.
[39] AR 1164, 1166.

ORDER - 8

a lot."[40]

While there is no indication plaintiff used alcohol on a daily basis or necessarily drank to excess as she did up to 2007/2008, clearly she has engaged in fairly consistent alcohol use over a several year period, even taking into consideration the absence of reports from 2012. That being said, there is little in the record concerning the actual impact that plaintiff's alcohol use has had on her ability to function. The evidence the ALJ relies on to find marked difficulties in plaintiff's functioning mostly consists of generalized opinion. For example, Dr. Sherman testified that she based her conclusions on the assumption or inference that "[p]erhaps" plaintiff's alcohol use was significant in that it exacerbated her symptoms of depression and anxiety.

Dr. Sherman went on to testify that she could not say how frequent alcohol use would have to be – or how long the effects of such use would last during periods of non-use – for the alcohol use to be presumed to exacerbate underlying symptoms of depression or anxiety, as it is a completely individual determination. Rather, at most she could only testify that it was "known in the literature" that alcohol exacerbates those symptoms. The same is true with respect to Dr. Sherman's testimony that those who use alcohol have a "generalized tendency" to underreport it. Dr. Sherman was unable to point to any specific incidences of underreporting in the record, but rather she based her testimony on the general view that "characteristically" most people who use alcohol underreport how much they use and when they use it. Indeed, Dr. Sherman admitted that her comment concerning underreporting was "[n]ot specific" to plaintiff.

While Dr. Sherman certainly may have expertise in the area of alcohol and drug abuse, and while *some* "connect[ing] of the dots" may be necessary in order to form the basis of a medical opinion as to the impact of a claimant's substance use, the determination as to whether

---
[40] AR 1150.

ORDER - 9

DAA is a materially contributing factor must be specific to the claimant. That is, the record must establish that the claimant "would not be disabled in the absence of DAA."[41] But again, other than her assertion that alcohol use in general impacts functioning, and that those who engage in such use generally underreport it, Dr. Sherman was unable to explain how the instances of use in the record actually show *plaintiff* was markedly impaired thereby.

It is true that Dr. Sherman testified that she inferred or assumed the existence of symptom exaggeration and underreporting from the number of instances in which plaintiff reported using alcohol. Dr. Sherman, however, offered no explanation as to how the number or nature of those reports either show or suggest that plaintiff's symptoms were exaggerated to the point of causing *marked* difficulties in her ability to function. The ALJ's reliance on statements from examining psychologist Nicole Seymanski, Psy.D., as support for Dr. Sherman's conclusions are also to no avail. Dr. Seymanski did note that "[s]ymptoms of depression, anxiety and insomnia frequently accompany alcohol dependence."[42] However, at most Dr. Seymanski offered a *rule out* diagnosis of alcohol abuse, and did not specifically link any of the mental functional limitations she found to alcohol use.[43]

The record similarly fails to support Dr. Sherman's testimony and the ALJ's finding that *plaintiff's* marijuana use impacted her ability to function.[44] Dr. Seymanski did note that "*[t]aken in high doses*, cannabinoids *can* have psychoactive effects that can be similar to those of hallucinogens," and that "[p]aranoid ideation ranging from suspiciousness to delusions and

---

[41] Social Security Ruling (SSR) 13-2p, 2013 WL 621536, at *9.

[42] AR 423, 783.

[43] AR 422-24.

[44] AR 783, 811-13.

ORDER - 10

hallucinations *can* occur."[45] Once more, though, Dr. Sheymanski only offered a rule-out diagnosis of cannabis use, and she did not specifically link any mental functional limitations to marijuana use.[46] Further, the mere fact that plaintiff was using a medicinal marijuana card for treatment of pain related to degenerative joint disease until February 2011, and possibly August of that year, does not indicate she used marijuana at a frequency or to an extent that necessarily would lead to marked difficulties in mental functioning.[47] Indeed, even if plaintiff was engaged in *daily* marijuana use – of which there is no evidence – this alone would not suggest that kind of impact, as Dr. Seymanski noted that such frequency of use can be seen to cause "*[m]ild* forms" of depression, anxiety, and irritability.[48]

As plaintiff also notes, no other medical source in the record has diagnosed plaintiff with a substance use disorder beyond that of a rule-out diagnosis. In addition, in late November 2011, not long after Dr. Seymanski issued her report, plaintiff underwent "a complete alcohol and drug evaluation."[49] No withdrawal symptoms were noted, plaintiff did not appear to be suffering from chemical dependency, and based on the DAST (Drug and Alcohol Screening Test), the evidence was insufficient to support a substance abuse or dependence diagnosis.[50] This further calls into question the diagnoses Dr. Sherman assessed, as well as the conclusions she drew therefrom and from the evidence of substance use contained in the record. The ALJ's reliance on Dr. Sherman's testimony and his decision to give it significant weight thus was unjustified.

---

[45] AR 423 (emphasis added).
[46] AR 422-24
[47] AR 421, 623, 783, 812.
[48] AR 423 (emphasis added).
[49] AR 623.
[50] AR 623-24.

ORDER - 11

II.     The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence.[51] Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]."[52] In such situations, "the ALJ's conclusion must be upheld."[53] Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility."[54]

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons."[55] The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[56] The ALJ also may draw inferences "logically flowing from the evidence."[57] Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion."[58]

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.[59] Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate

---

[51] *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998).

[52] *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

[53] *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999).

[54] *Id.* at 603.

[55] *Reddick*, 157 F.3d at 725.

[56] *Id.*

[57] *Sample*, 694 F.2d at 642.

[58] *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

[59] *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).

ORDER - 12

reasons that are supported by substantial evidence in the record."[60] However, the ALJ "need not discuss *all* evidence presented" to him or her.[61] The ALJ must only explain why "significant probative evidence has been rejected."[62]

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.[63] On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."[64] An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."[65] A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."[66]

Plaintiff argues the ALJ failed to properly consider the medical opinion evidence from Dr. Seymanski and examining psychiatrist Denise Chang, M.D., in regard to her concentration, persistence, and pace, as well as her social functioning. Dr. Seymanski opined that plaintiff had moderate to severe limitations in several of those areas,[67] and Dr. Chang opined that plaintiff may have difficulty accepting instructions from supervisors and difficulties interacting with co-

---

[60] *Id.* at 830-31.

[61] *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).

[62] *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

[63] *See Lester*, 81 F.3d at 830.

[64] *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

[65] *Lester*, 81 F.3d at 830-31.

[66] *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

[67] AR 423-24.

ORDER - 13

workers and the public.[68] The ALJ declined to give full weight to these limitations to the extent they describe plaintiff's ability to function if the substance use stopped.[69] But because the ALJ relied heavily on Dr. Sherman's testimony to do so – especially with respect to Dr. Seymanski's opinion –the ALJ's entire analysis here is tainted, as well as his analysis in general of plaintiff's concentration, persistence, and pace and social functioning.

II.     The ALJ's RFC Assessment

A claimant's RFC assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work.[70] It is what the claimant "can still do despite his or her limitations."[71] A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record.[72] However, an inability to work must result from the claimant's "physical or mental impairment(s)."[73] Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments."[74] In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence."[75]

The ALJ found that if the substance use stopped, plaintiff could perform simple, routine, and repetitive tasks, with occasional superficial interaction with co-workers and supervisors, no

---

[68] AR 294.
[69] AR 796.
[70] SSR 96-8p, 1996 WL 374184 *2.
[71] Id.
[72] Id.
[73] Id.
[74] Id.
[75] Id. at *7.

ORDER - 14

interaction with the public, and few, if any, changes in the work setting.[76] But because as discussed above the ALJ erred in giving significant weight to the testimony of Dr. Sherman, and in giving only partial weight to the opinions of both Dr. Seymanski and Dr. Chang concerning plaintiff's concentration, persistence, and pace and social functioning , it is far from clear that the ALJ's RFC assessment accurately describes all of plaintiff's mental functional limitations or is supported by substantial evidence. Thus, here too the ALJ erred.

III.   The ALJ's Step Five Determination

If a claimant cannot perform his or her past relevant work, at step five of the sequential disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.[77] The ALJ can do this through the testimony of a vocational expert.[78] An ALJ's step five determination will be upheld if the weight of the medical evidence supports the hypothetical posed to the vocational expert.[79] The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence.[80] Accordingly, the ALJ's description of the claimant's functional limitations "must be accurate, detailed, and supported by the medical record."[81]

The ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy, based on the vocational expert's testimony offered in response to a hypothetical question concerning an individual with the same age, education, work

---

[76] AR 790.

[77] *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 416.920(d), (e).

[78] *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000); *Tackett*, 180 F.3d at 1100-1101.

[79] *Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1987); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).

[80] *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

[81] *Id.* (citations omitted).

ORDER - 15

experience and RFC as plaintiff.[82] Again, however, because the ALJ erred in evaluating the medical opinion evidence in the record, and in assessing plaintiff's RFC, the vocational expert's testimony, and thus the ALJ's reliance thereon to find plaintiff not disabled at step five, cannot be said to be supported by substantial evidence or free of error.

IV.     Remand for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits."[83] Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."[84] Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate."[85]

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose."[86] Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.[87]

Plaintiff argues remand for an award of benefits is the proper remedy. However, because issues remain in regard to the medical opinion evidence in the record concerning the actual impact of

---

[82] AR 798-99.

[83] *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

[84] *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

[85] *Id.*

[86] *Smolen*, 80 F.3d at 1292; *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).

[87] *Smolen*, 80 F.3d 1273 at 1292; *McCartey v. Massanari*, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

ORDER - 16

plaintiff's substance use on her ability to function – and therefore her ability to perform other jobs existing in significant numbers in the national economy – remand for further consideration of those issues is warranted.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ improperly determined plaintiff to be not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings.

DATED this 16th day of May, 2016.

Karen L. Strombom
United States Magistrate Judge

ORDER - 17